**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALIKI POFAHL** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 26-3069** |
| | : | |
| **POWER HOME REMODELING GROUP LLC** | : | |
| | : | |

**McHUGH, J.** **October 15, 2026**

## MEMORANDUM

This is an employment discrimination case where Plaintiff alleges that she was subjected to sex, pregnancy, and disability discrimination. The Defendant-employer moves to compel arbitration based upon an arbitration agreement Plaintiff signed as part of her employment onboarding. Although the agreement is very poorly drafted, a valid agreement to arbitrate exists. But it does not yield the result Defendant seeks. That is so because Plaintiff's complaint falls within the scope of the agreement's broad exclusion from arbitration of "claims, disputes or controversies . . . seeking equitable relief." ECF No. 9-4 at 8. The motion to compel arbitration will therefore be denied.

## I. Relevant Facts

In August 2021, Plaintiff Aliki Pofahl began working for Defendant Power Home Remodeling Group LLC. As part of her onboarding, Plaintiff was required to sign a Confidential Information, Intellectual Property, Restrictive Covenant and Arbitration Agreement ("Agreement"), which included an arbitration provision. The Agreement states, in relevant part:

> Employee agrees that any claims, disputes or controversies initiated by the Company or Employee or on Employee's behalf . . . seeking equitable relief (including, without limitation, claims for declaratory or injunctive relief or to an equitable accounting) . . . shall not be subject to arbitration as set forth below and shall be filed exclusively in the federal or state courts in the Eastern District of

> Pennsylvania or Chester County, Pennsylvania . . . In addition, the Company and Employee (the "Parties") agree to waive their right to have a trial before a jury on any claim, dispute or controversy that shall be determined in court. In order to allow for a prompt, fair and confidential way to resolve all disputes arising under or relating to this Agreement other than the Excluded Claims, the Parties agree to mandatory arbitration as set forth below. The Parties understand that by entering into this Agreement, they are giving up their right to have disputes arising out of or in any way related to Employee's employment with the Company (or application for employment) decided in a court of law and, if applicable, by a jury. It is agreed and understood that the term "Employee" includes both applicants who are and are not hired by the Company.

ECF No. 9-4 at 8; ECF No. 11-6 at 5. The onboarding documents continue for an additional twenty-two pages, and include a series of company policies, each of which Plaintiff was separately required to acknowledge, together with her acknowledgement of receipt of the company's Employee Handbook. But at no point do they provide details of the procedure for arbitration.

## II. Standard of Review

Because the arbitration agreement was not part of the pleadings but was submitted in connection with the motion to compel arbitration, the summary judgment standard in Federal Rule of Civil Procedure 56 applies. *Young v. Experian Info. Sols., Inc.*, 119 F. 4th 314, 319 (3d Cir. 2024). Plaintiff does not dispute the genuineness of the agreement, and both its enforceability and its scope can be decided as a matter of law.[1]

## III. Discussion

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F. 3d 529, 532 (3d Cir. 2005). "When a

[1] Only Plaintiff argues that discovery is necessary. Defendant maintains that the issue is one of law and that further discovery is unnecessary. *See* ECF No. 12 at 3.

dispute consists of several claims, the court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate." *Id.* I conclude that although a valid agreement to arbitrate exists, the issues in this case fall outside the scope of that agreement.

**A. A valid arbitration agreement exists with sufficiently definite terms.**

The parties formed a valid agreement to arbitrate. The Federal Arbitration Act ("FAA") states that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "To determine whether the parties agreed to arbitrate," courts "turn to 'ordinary state-law principles that govern the formation of contracts.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F. 3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Blair v. Scott Specialty Gases*, 283 F. 3d 595, 603 (3d Cir. 2002) ("A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA.").

"Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Kirleis*, 560 F. 3d at 160. Plaintiff does not dispute the adequacy of consideration, and her signature on the Agreement manifests an intent to be bound. *See Germantown Sav. Bank v. Talacki*, 657 A. 2d 1285, 1289 (Pa. Super. Ct. 1995) (noting that a signature clearly evidences a party's intention to be bound by the signed agreement). The remaining question is whether the terms of the agreement are sufficiently definite to be enforced. In Pennsylvania, "not every term of a contract must always be stated in complete detail." *Snaith v. Snaith*, 422 A. 2d 1379, 1382 (Pa. Super. Ct. 1980). The determinative factor is whether the terms are sufficiently definite to give a court a reasonably

certain basis to provide remedies. *Helpin v. Trs. of Univ. of Pa.*, 969 A. 2d 601, 611 (Pa. Super. Ct. 2009), *aff'd*, 10 A. 3d 267 (Pa. 2010).

Plaintiff argues that that the phrase "as set forth below" in the Agreement necessarily signifies missing terms, requiring some detail as to the identity of the arbitrators, governing rules, and cost allocation. ECF No. 11-1 at 4-5. But both the FAA and Pennsylvania's Revised Statutory Arbitration Act implicitly recognize that arbitration agreements do not always include such detail by empowering courts to appoint arbitrators where an agreement is silent. *See* 9 U.S.C. § 5; 42 Pa. Cons. Stat. § 7321.12. The ability of a court to appoint arbitrators is consistent with the principle of Pennsylvania contract law which provides that "[i]f an essential term is left out of the agreement, the law will not invalidate the contract but will include a reasonable term" consistent with the expressed intention of the parties. *Greene v. Oliver Realty, Inc.*, 526 A. 2d 1192, 1194 (Pa. Super. Ct. 1987). Even failure to address such critical terms as allocation of the costs and fees associated with arbitration does not necessarily render the agreement unenforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). Importantly, the Agreement did not simply stop after the language Plaintiff highlights. After the reference to "mandatory arbitration as set forth below," the Agreement proceeds to state that the employee and company will arbitrate all disputes arising out of the employee's employment, carving out excluded claims. In short, the Agreement supplied content under the rubric of "below," only it addressed scope rather than procedure.

Plaintiff relies heavily upon *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A. 3d 94 (Pa. Super. Ct. 2015). There, the personal representative of a nursing home patient signed a blank form contract with the names of the parties never filled in, which the nursing home itself never signed. 108 A. 3d at 96-97. The contract specifically incorporated by reference a brochure

describing the arbitration process, but the brochure was never supplied. *Id.* at 96, 98. Not surprisingly, the court held there was no meeting of the minds. *Id.* at 97-98. Here, in contrast, the parties are named, the agreement to arbitrate is clear, and the scope of claims subject to arbitration is defined. If the parties cannot agree on an arbitrator, the Court is empowered to appoint one. I therefore find that a valid agreement to arbitrate exists between Plaintiff and Defendant.[2]

**B. The issues in this case fall within the Agreement's exclusion.**

The issues in this case, however, are not subject to arbitration under the literal terms of the Agreement. Plaintiff argues that the Agreement excludes "*any* claims asserted by Employee *seeking equitable relief*," further observing that "[e]ach of the *ad damnum* clauses" in Plaintiff's Complaint "seeks multiple forms of equitable relief." ECF No. 11-1 at 15-16. "Accordingly," Plaintiff reasons, "when the *entire* putative arbitration provision is considered, it is undeniable that it does *not* apply to this lawsuit." *Id.* at 16. Plaintiff concludes that "[u]nder the plain meaning of" the Agreement, "if the 'claim, dispute or controversy' seeks equitable relief, that claim, dispute or controversy is not subject to arbitration." *Id.* I agree.

"Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Parties may, for example, "limit by contract the issues which they will arbitrate." *Id.* Here, the Agreement states that "Employee agrees that any claims, disputes or controversies initiated by the Company or Employee or on

[2] I reject Plaintiff's argument that the Agreement is not enforceable on unconscionability grounds. Although Plaintiff has shown some procedural unconscionability, she has not made a showing that the Agreement is substantively unconscionable. *See Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F. 3d 221, 230 (3d Cir. 2012) ("To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable.").

Employee's behalf . . . seeking equitable relief . . . shall not be subject to arbitration as set forth below . . ." ECF No. 9-4 at 8. As Plaintiff notes, the agreement therefore excludes an issue from arbitration if it is (1) a claim or a dispute or a controversy that (2) seeks equitable relief.

"[W]hether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F. 3d 165, 172 (3d Cir. 2014). It is well-established that courts "must resolve 'any doubts concerning the scope of arbitrable issues in favor of arbitration.'" *Id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)) (alteration in original). "However, the Supreme Court has repeatedly warned against 'overreading its precedent' concerning the presumption of arbitrability." *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)) (alterations in original). "The presumption in favor of arbitration does not 'take courts outside the settled framework' of using principles of contract interpretation to determine the scope of an arbitration clause." *Id.* at 172-73 (quoting *Granite Rock*, 561 U.S. at 302) (alterations in original). "Thus, the presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. Otherwise, the plain language of the contract controls." *Id.* at 173 (citation omitted); *see also Gay v. CreditInform*, 511 F. 3d 369, 387 (3d Cir. 2007) (noting that "while interpretive disputes should be resolved in favor of arbitrability, a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt") (quoting *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F. 3d 44, 55 (3d Cir. 2001)).

A court is obligated to begin "by carefully analyzing the contractual language in the arbitration clause at issue." *CardioNet*, 751 F. 3d at 173 (internal quotation marks omitted). Under the Agreement, a topic may be exempt from arbitration if it is a "claim" or a "dispute" or a

"controversy." The latter two terms are broad, albeit somewhat overlapping. *See Controversy*, Black's Law Dictionary (12th ed. 2024) (defining "controversy" as "[a] disagreement or dispute, esp[ecially] in public" or "[a] justiciable dispute"); *Dispute*, Black's Law Dictionary (12th ed. 2024) (defining a "dispute" as "[a] conflict or controversy, esp[ecially] one that has given rise to a particular lawsuit"); *see also Trippe*, 401 F. 3d at 533 (describing an arbitration clause covering "all disputes, claims, and controversies arising under [a contract], or a breach thereof" as "very broad"); *Cornelius v. CVS Pharmacy Inc.*, 133 F. 4th 240, 246-47 (3d Cir. 2025) (discussing the ordinary meaning of "dispute"). The ordinary meaning of a "controversy" refers to the entire set of facts and issues that the parties disagree over, i.e., an entire case. This is borne out by the fact that the judicial power created by Article III, § 2 of the Constitution extends to "Cases" and "Controversies." And the statute defining the scope of federal jurisdiction makes clear that claims are subsumed within a matter pending before a federal court: "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) Here, Plaintiff's action is a "controversy," it is Defendant's treatment of Plaintiff that is in "dispute," and in every count of the Complaint Plaintiff seeks equitable relief, such as reinstatement and mandatory training. The plain language of the exclusion exempting the controversy removes this case from arbitration.

The Sixth Circuit recently addressed similar definitional issues in *Bruce v. Adams & Reese, LLP*, 168 F. 4th 367 (6th Cir. 2026), providing valuable insight. In *Bruce*, the Court evaluated whether a claim for sexual harassment and claims for disability discrimination fell within the same "case" for purposes of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act's ("EFAA's") ban on mandatory arbitration of sexual harassment claims. 168 F. 4th at 381-

82. It concluded that because the disability claims were part of the same case as the claims for sexual harassment, they were not subject to arbitration. *Id.* at 385-86. Starting with the text, it noted the legal definition of a "case" as a "civil or criminal proceeding, action, suit, or controversy at law or in equity." *Id.* at 382 (quoting *Case*, Black's Law Dictionary (12th ed. 2024)). The court juxtaposed the broad meaning of a "case" with the narrower definition of a "'claim,' which denotes a singular 'demand for money, property or a legal remedy to which one asserts a right'; i.e., a '*claim for relief*.'" *Id.* (quoting *Claim*, Black's Law Dictionary (12th ed. 2024)). As the court noted, a "case" is defined as a type of "controversy," encompassing all the claims raised.[3] So too in this case, the term "controversy" similarly encompasses the entire body of claims brought by Plaintiff. In mathematical terms, "claims" comprise a subset falling within the universal set of a "controversy."

The Third Circuit's instruction to determine arbitrability "on an issue-by-issue basis" if "a dispute consists of several claims" does not change this outcome. *Trippe*, 401 F. 3d at 532. As the Sixth Circuit noted in *Bruce*, reliance on this principle here would "simply beg[] the question" of how to define the "issue." 168 F. 4th at 384. The Agreement requires analysis on a broad plane that encompasses "claims, disputes *or* controversies." ECF No. 9-4 at 8 (emphasis added). To paraphrase *Bruce*, "[b]ecause the [Agreement's] plain language controls, then each claim that is a part of [Plaintiff's controversy] may remain in court, whether we take them claim-by-claim or as

[3] The court acknowledged that it was interpreting a statute, not a contract. 168 F. 4th at 384. But the court stated that "even if the FAA's contract-interpretation principles were to apply to our interpretation of the EFAA's provisions, we could 'not reach a result inconsistent with the plain text simply because the policy favoring arbitration is implicated.' Because the EFAA's text unambiguously precludes arbitration of Bruce's entire case, no presumption could compel a different reading." *Id.* (quoting *EEOC v. Waffle House, Inc.*, 543 U.S. 279, 294 (2002)) (citation omitted and alterations in original).

a whole." *Id.* Even defining the "issue" at a more granular level would lead to the same outcome, because specific claims are necessarily subsumed within the overall controversy,

If the Agreement only excluded "claims" seeking equitable relief from arbitration, the scope of the clause might be seen as ambiguous, because a claim is narrower than a dispute or a controversy. *See Bruce*, 168 F. 4th at 382; *see also* 28 U.S.C. § 1367(a) (as quoted above). A claim can be understood as a request for a specific kind of relief. But Defendant's decision to write in "dispute" and "controversy" broadens the scope of the exclusion. The Agreement's language is unambiguous, meaning that the presumption favoring arbitrability is not applicable. *See In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions,* 133 F. 3d 225, 231 (3d Cir. 1998) (stating that although the presumption "weighs genuine ambiguities against the resisting party," it "is not a mandate for courts to ignore explicit textual agreements or to reshape the parties' obvious intent").

Defendant has little response on this point. It admits that Plaintiff seeks "equitable remedies," but asserts that the "Agreement was plainly intended to carve out claims where the primary remedy sought is injunctive or declaratory relief." ECF No. 12 at 10. This argument fails because the plain language of the contract is the most reliable expression of the parties' intent. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.,* 247 F. 3d 79, 92 (3d Cir. 2001). The text of the Agreement contains no indication that the parties meant to qualify the exclusion clause by the "primary remedy" sought in the "claims, disputes or controversies." Defendant wrote the Agreement and gave it to Plaintiff to sign, and cannot now avoid the plain language that it drafted.

In sum, the issues in this case are not arbitrable because the Agreement, which Defendant drafted, unambiguously excludes them from arbitration.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Compel Arbitration will be denied. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge